UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

AMARJIT S. VIRK, M.D.,

               Plaintiff,

v.                                    **DECISION AND ORDER**
                                                14-CV-381S

MAPLE-GATE ANESTHESIOLOGISTS, P.C.,
and JON GRANDE, M.D.,

               Defendants.
───────────────────────────────

## I. INTRODUCTION

Plaintiff Amarjit S. Virk, M.D., commenced this action in February 2014 in New York State Supreme Court, Erie County, alleging state law breach of contract and discrimination claims, as well as employment discrimination under federal law. Defendants removed the action to this Court shortly after being served with the summons and complaint in May 2014. Presently before this Court is Defendants' motion for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and Rule 12(b) of the Federal Rules of Civil Procedure to compel arbitration in this matter. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND

On May 8, 2000, Plaintiff entered into an employment agreement with Defendant Maple-Gate Anesthesiologists, P.C. ("MGAPC"). (Am Compl ¶¶ 23-24, Docket No. 7[1];

---

[1]Although Plaintiff filed the Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) after Defendants filed the present motion to compel, Defendants assert that the their arguments apply with equal force to the new pleading. (Weissflach Reply Decl ¶¶ 3-5, Docket No.

1

Chen Decl ¶ 11 Ex A, Docket No. 5-1.) Pursuant to its terms, the 2000 Employment Agreement was to remain effective until termination in accordance with Article 9, which provides:

> This Agreement shall be terminated upon the occurrence of any of the following events:
>
> (a) Disqualification of the Employee, whether temporarily or permanently, by the appropriate licensing authority, to practice his profession within the State of New York; or revocation, suspension or modification of medical privileges limiting Employee's ability to provide services pursuant to this Contract. In such event, Employee shall receive only such compensation as accrued, and nothing further[;]
>
> (b) The death of the Employee;
>
> (c) The permanent disability of the Employee that renders him unable to perform his duties;
>
> (d) Whenever the Employer, acting upon a majority vote of its Board of Directors, and the Employee shall mutually agree to terminate this Agreement in writing[;]
>
> (e) Upon sixty (60) days prior written notice of termination to the other by either the Employer, or the Employee.

(Chen Decl Ex A.) The employment agreement could also only be amended in a writing signed by both parties. (Id. (Article 12).)

> Article 16 contains an arbitration clause:
>
> Any controversies or claims arising out of or relating to this Agreement or the breach thereof, with the exception of the Non-Competition During Employment Clause contained in Paragraph 4 and the Covenant Not to Compete contained in Paragraph 9 and the enforcement of those provisions by Court Order, Judgment, Temporary Restraining Order or Injunction, shall

---

10-1.) This Court will therefore consider the parties' arguments, as they have intended, as relating to the Amended Complaint.

be settled by arbitration in accordance with the then current rules of the American Arbitration Association, and judgment upon the award rendered may be entered in a Court having jurisdiction thereof.  Any and all arbitration proceedings must be commenced with[in] six (6) months of the date of any alleged controversy or claim and if not so commenced shall be permanently barred.

(Id.) Rule 6 of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures provides as relevant:

   a.   The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

   b.   The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(Weissflach Decl Ex B, Docket No. 5-2.)

Finally, as relevant here, the 2000 Employment Agreement also provided for Plaintiff's attainment of shareholder status in MGAPC after one year:

Upon the faithful performance and completion of the terms of this Agreement the Employee shall be entitled after one (1) year of full-time employment to membership in the corporation of the Employer together with all the rights and privileges attendant to a full shareholder and member of the Board of Directors and an employment contract under the same conditions and terms as then existing for other equally qualified full-time physician employees of the Employer. Provided, however, that should this Agreement be terminated pursuant to Paragraph 9 herein for whatever reason prior to the completion of one year of full-time employment, the Employee shall not be entitled to any rights or benefits under this Paragraph . . .

(Id. (Article 18).)

Plaintiff successfully completed his first year of employment and became a member/shareholder/director of MGAPC in 2001. (Pl's Aff ¶¶ 13, 15, Docket No. 8.)

MGAPC terminated the parties' relationship in 2013. (Am Compl ¶¶ 27-28.) The notification letter, dated May 17, 2013, states as relevant:

> Today Maple-Gate Anesthesiologists, P.C. received a letter from Kaleida Health stating that effective May 15, 2013, Kaleida suspended your clinical privileges.
>
> As you know, your contract with Maple-Gate Anesthesiologists, P.C., Section 9 (a) states: "This Agreement shall be terminated upon the occurrence of any of the following events: (a) . . . revocation, suspension, or modification of medical privileges limiting Employee's ability to provide services pursuant to this cont[r]act."
>
> Because you are unable to serve as a physician in Kaleida Health's facilities, your contract with Maple-Gate Anesthesiolgists, P.C. was terminated effective May 15, 2013.

(Chen Aff Ex B, Docket No. 10-3.)

Plaintiff obtained an order from New York State Supreme Court, Erie County, in February 2014 annulling Kaleida Health's "precautionary suspension" of Plaintiff's privileges and directing Kaleida Health to expunge any reference to that suspension from Plaintiff's personnel file. (Pl's Aff ¶ 26 Ex 3, Docket No. 8.) Although Plaintiff informed MGAPC that the suspension had been expunged, he was never reinstated. (Id. ¶ 29.)

Plaintiff commenced the instant action in February 2014. His Amended Complaint asserts, in addition to a breach of contract claim, employment discrimination and retaliation in violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12117 et seq. and 12131 et seq. ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008; and the New York State Human Rights Law, Executive Law § 296. (Am Compl ¶ 1.) Following removal to this Court,

Defendants filed the instant motion to compel arbitration.

## III. DISCUSSION

Defendants seek to enforce the arbitration provision contained in the 2000 Employment Agreement pursuant to the Federal Arbitration Act, the principal purposes of which are to promote arbitration and ensure that arbitration agreements are enforced according to their terms. AT&T Mobility LLC v. Concepcion, – U.S. –, 131 S. Ct. 1740, 1745, 1748, 179 L. Ed. 2d 742 (2011). Plaintiff does not dispute Defendants' assertion that the FAA governs resolution of the present motion. (Defs' Mem of Law at 4-5; Pl's Mem in Opp'n at 7). In resolving a motion to compel arbitration brought under the FAA, a court applies a standard similar to that applicable on a summary judgment motion. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citing Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995); see Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012). Documents outside the pleadings may properly be considered in deciding a motion to compel arbitration. Molina v. Coca-Cola Enterprises, No. 08-CV-6370, 2009 WL 1606433, *1 n. 1 (W.D.N.Y. June 8, 2009).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Comm'ns Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). "While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that

arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) (internal citations and quotation marks omitted); Schnabel, 697 F.3d at 119 (FAA preserves state law principles of contract). Thus, a party may not be compelled under the FAA to submit to arbitration "unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen S.A., 559 U.S. at 684 (emphasis removed); Ross v. American Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008). "Whether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.' " Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (quoting Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996)).

**A.     Who Determines Arbitrability**

Defendants argue that the issue of the arbitrability of Plaintiff's claims, including the question of the validity of the 2000 Employment Agreement, is one for the arbitrator, not this Court. (Defs' Mem of Law at 8-9.) "The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.' " NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010, 1031 (2d Cir. 2014) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)); see Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003) (recognizing the same rule under New York law). This "clear and unmistakable" provision is "satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability."

NASDAQ OMX Group, Inc., 770 F.3d at 1031 (emphasis in original) (citing PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir.1996)).

Defendants argue that the arbitration provision at issue incorporates by reference the American Arbitration Association's broad grant of authority to the arbitrator to determine his or her own jurisdiction, therefore all issues of arbitrability, including the validity of the 2000 Employment Agreement itself, have been clearly and unmistakenly delegated to the arbitrator by the parties. (Def's Mem of Law at 8-9.) Plaintiff does not respond to this argument.

As Defendants argue, where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (citing Shaw Group, 322 F.3d at 122). Nonetheless, an ambiguity may be found even in a broadly worded arbitration clause that also precludes arbitration of certain issues. NASDAQ OMX Group, Inc., 770 F.3d at 1032; Katz v. Feinberg, 290 F.3d 95, 97 (2d Cir. 2002).

For example, in NASDAQ OMX Group, Inc., the relevant arbitration provision stated that "[e]xcept as may be provided in the NASDAQ OMX Requirements, all claims, disputes, controversies, and other matters in question between the Parties to this Agreement . . . shall be settled by final binding arbitration." NASDAQ OMX Group, Inc., 770 F.3d at 1016. That agreement further provided that "any arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Id. The Second Circuit found that this arbitration provision did "not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules." Id. at 1032.

Instead, the arbitration provision "carves out certain issues from arbitration, a circumstance that thus delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." Id. As a result, the arbitration provision necessarily "provides for AAA rules to apply to such arbitrations as may arise under the Agreement," but not to the validity of the agreement itself. Id.

Such is the case here. The arbitration provision in the 2000 Employment Agreement does not unequivocally submit any and all issues to arbitration, but excludes those controversies or claims related to the non-compete and non-competition paragraphs of that contract. (Chen Decl Ex A.) Thus, the provision raises an issue of arbitrability that must be resolved before the AAA rules may be applied. NASDAQ OMX Group, Inc., 770 F.3d at 1032; Katz, 290 F.3d at 97; see Zachariou v. Manios, 68 A.D.3d 539, 539, 891 N.Y.S.2d 54 (N.Y.A.D. 1st Dep't 2009) (holding that reference to AAA rules in conjunction with a limited arbitration provision does not constitute clear and unmistakable evidence of intent to have arbitrator decide arbitrability). The fact that Plaintiff's claims do not fall within the exception to the arbitration provision does not change this result, inasmuch as the preclusion of certain issues from arbitration undermines a conclusion that delegation of any arbitrability determination to the arbitrator was clear and unmistakable. See NASDAQ OMX Group, Inc., 770 F.3d at 1032 (rejecting the defendant's argument that a carve-out provision was irrelevant because the referenced rules limiting arbitration were never enacted). The issues of the validity of the 2000 Employment Agreement and the arbitration provision found within are therefore appropriately resolved by this Court.

**B.      Validity of the 2000 Employment Agreement**

Defendants assert that the arbitration provision found at Article 16 is valid and enforceable because the 2000 Employment Agreement is the very contract underlying Plaintiff's claims. (Defs' Mem of Law at 6-9; Defs' Reply Mem at 2-4.) Plaintiff disputes this assertion, arguing that the 2000 Employment Agreement is not enforceable because (1) by its own terms, that agreement became inoperative once Plaintiff completed his first year of employment; and (2) that agreement was superseded by a 2005 employment agreement. (Pl's Mem in Opp'n at 8-12.) Neither argument has merit.

Under New York law, a fundamental principle of contract interpretation is that written "agreements are construed in accord with the parties' intent," the best evidence of which "is what they say in their writing." Greenfield v. Philles Records, 98 N.Y.2d 562, 569, 780 N.E.2d 166 (2002). "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield, 98 N.Y.2d at 569.  "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.' " Greenfield, 98 N.Y.2d at 569 (quoting Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 385 N.E.2d 1280 (1978)).  Whether a contract is ambiguous is a question of law for the court, determined by "looking within the four corners of the document, not to outside sources." Kass v. Kass,  91 N.Y.2d 554, 566, 696 N.E.2d 174 (1998).  Indeed, extrinsic evidence of the parties' intent may not be considered unless an agreement is ambiguous. Greenfield, 98 N.Y.2d at 569.  Instead, a court should:

> examine the entire contract and consider the relation of the parties and the

circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.

Kass, 91 N.Y.2d at 566 (citation omitted).

Here, the plain language of the 2000 Employment Agreement, set forth above, provides that after the successful completion of one year of employment, an employee is "entitled" to become a shareholder and director in MGAPC, but contains no language automatically terminating or modifying the previously agreed upon conditions and obligations of employment upon achieving eligibility for shareholder status. (Chen Decl Ex A (Article 18), Docket No. 5-1.) If the contract were meant to terminate at the end of one year, such a condition could have been expressly written. Instead, Article 9 limits the conditions under which the contract can be terminated to disqualification from practice, death, disability, mutual agreement in writing, and unilateral termination upon 60 days written notice. (Chen Decl Ex A.) As Defendants argue, there is no evidence that any of the termination conditions were met until Plaintiff's May 13, 2013 termination based on disqualification. (Chen Aff Ex B, Docket No. 10-3.)

Similarly, the 2000 Employment Agreement also states that completion of one year of employment entitled Plaintiff to "an employment contract under the same conditions and terms as then existing for other equally qualified full-time physician employees," but does not expressly state that any specific contract became effective upon the one-year mark. (Chen Decl Ex A (Article 18), Docket No. 5-1.) Contrary to Plaintiff's contention, there is no evidence that a superseding contract was entered into by the parties. Plaintiff argues that a new agreement for shareholder employees, one that notably does not contain an

10

arbitration clause, was announced in 2005 and subsequently followed by MGAPC. (Pl's Mem in Opp'n at 3-4, 9-10; Pl's Aff ¶¶ 16-18, Docket No. 8.) Specifically, he asserts:

> The 2005 Agreement for Shareholder Employees of MGAPC (the "2005 Agreement") . . . has been followed and performed by MGAPC, governs the MGAPC Shareholders' amended benefits packages, including additional compensation and bonuses, increased vacation time, excess insurance coverage, pension plans, life insurance, health savings account, voting rights, board directorship, and corporate officer status, and supersedes any prior agreements, by its own terms.

(Pl's Aff ¶ 17.)

Under New York law, however, a new agreement will not supersede an existent contract unless the parties have "clearly expressed or manifested" that intention. See Northville Indus. Corp. v. Fort Neck Oil Terminals Corp., 100 A.D.2d 865, 867, 474 N.Y.S.2d 122 (N.Y.A.D. 2d Dep't 1984), aff'd, 64 N.Y.2d 930, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985); see also Penguin Group (USA) Inc. v. Steinbeck, 537 F.3d 193, 200 (2d Cir.2008), cert denied, 556 U.S. 1253, 129 S. Ct. 2383, 173 L. Ed. 2d 1326 (2009). Although the 2005 Agreement submitted by Plaintiff states that it "supersedes and makes null and void any previous Employment Agreements between the parties hereto," (Pl's Aff Ex 2 ¶ 23), the copy provided is unsigned and addressed, not to Plaintiff, but to "George Toufexis, M.D." (Pl's Aff Ex 2.) Plaintiff has not offered any evidence that he in fact signed the 2005 Agreement, and in fact does not even allege that he did so.

Plaintiff argues instead that MGAPC was required to implement the 2005 Employment Agreement by a separate agreement between it and Kaleida Health, and as a result the new employment contract was made "mandatory." (Pl's Aff ¶¶ 4-5, 14-15, Docket No. 13.) No legal argument is offered in support of his contention that, "[c]onsidering the mandatory nature of the 2005 employment agreement, getting

11

shareholders' signatures was not considered necessary." (Id. ¶ 5.) With respect to the assertion that MGAPC acted in accordance with the 2005 Agreement, Plaintiff has failed to develop an argument that the 2000 Employment Agreement was modified by the parties's subsequent course of conduct. See generally Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P., 7 N.Y.3d 96, 104, 850 N.E.2d 653 (2006) (contractual rights may be abandoned by either affirmative conduct or a failure to act so as to evince an intent not to claim a purported advantage); Aiello v. Burns Intern. Sec. Services Corp., 110 A.D.3d 234, 245, 973 N.Y.S.2d 88 (N.Y.A.D. 1st Dep't 2013) (contracts requiring modifications to be made in writing by the parties may nonetheless be modified by actual performance and the parties' course of conduct). In any event, no evidence of any specific conduct has been offered that would tend to support Plaintiff's conclusory assertions that the 2005 Agreement governed all aspects of his relationship with Defendant MGAPC.

As a result, it must be concluded that Defendants have established that the 2000 Agreement is valid and the arbitration agreement found within it generally enforceable.

**C. Applicability of Arbitration Agreement to Federal Statutory Employment Discrimination Claims**

Having found the 2000 Employment Agreement enforceable, the next question is whether all of Plaintiff's current claims fall within the scope of its arbitration provision. Hartford Acc. & Indem. Co., 246 F.3d at 226; see Howsam v. Dean Witter Reynold, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (whether a particular type of controversy falls within a valid arbitration clause is a "question of arbitrability for a court to decide"). In keeping with the strong federal policy favoring arbitration, arbitration clauses

are construed as broadly as possible, with any ambiguities regarding the scope of arbitrable issues resolved in favor of arbitration. Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998). Further, "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." Oldroyd, 134 F.3d at 76 (emphasis removed) (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir.1997)).

In addition to the breach of contract claim, Plaintiff asserts causes of action under federal and state employment discrimination statutes: the Age Discrimination in Employment Act ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12117 *et seq.* and 12131 *et seq*. ("ADA"; and the New York State Human Rights Law, Executive Law § 296. "[A]s a general matter, '[c]ourts have consistently found that such claims can be subject to mandatory arbitration.' " Ragone v. Atlantic Video at the Manhattan Center, 595 F.3d 115, 120 (2d Cir. 2010) (quoting Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 150 (2d Cir. 2004)); see Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001);see also McClellan v. Majestic Tenants Corp., 68 A.D.3d 574, 889 N.Y.S.2d 846 (N.Y.A.D. 1st Dep't 2009).

Here, the 2000 Employment Agreement provides for arbitration of "[a]ny controversies or claims arising out of or relating to this Agreement or the breach thereof," with the exception of issues related to this agreement's non-compete and non-competition provision. (Chen Aff Ex A, Docket No. 5-1.) There is no dispute that Plaintiff's claims do not fall within the agreement's exception to arbitration. Further, the language that all other

"controversies or claims arising out of or relating to this Agreement or the breach thereof" is sufficient to raise a presumption that the statutory claims, as well as the breach of contract cause of action, are arbitrable. See Oldroyd, 134 F.3d at 76 (language that parties were required to arbitrate "[a]ny dispute, controversy or claim arising under or in connection with" agreement created presumption that federal statutory claims were included); see also Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003). Although this presumption is rebuttable, see White v. Cantor Fitzgerald, 393 F. App'x 804, 806-07 (2d Cir. 2010), Plaintiff has not raised an argument that, if enforceable, the 2000 Employment Agreement's arbitration requirement was not intended to encompass statutory employment discrimination claims.[2]

Plaintiff does argue, however, that enforcement of the arbitration provision in this case would be unlawful. Specifically, Plaintiff argues that because the employment discrimination statutes require that he exhaust administrative remedies before seeking judicial relief, the six-month limitation in the arbitration agreement would effectively preclude these employment discrimination claims from being heard in any forum. (Pl's Mem in Opp'n at 13-14.)

The Second Circuit has recognized that the emphatic application of the strong federal policy in favor of arbitration "does not amount to automatic application" Ragone v. Atlantic Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010). Because the issue of the validity of an arbitration agreement is considered under state law principles, "generally

---

[2] It should be noted, however, that because the 2000 Employment Agreement excepts certain issues from arbitration and also recognizes that there are or could be other agreements governing additional terms between the parties, such as a shareholder agreement, interpreting the arbitration provision to include statutory claims to which no reference has been made could be construed as overly broad. No such argument has been raised here, therefore this Court need not consider the issue further.

14

applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); Ragone, 595 F.3d at 121; see 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). To that end, courts "have expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operate as a prospective waiver of a party's right to pursue statutory remedies.'" American Exp. Co. v. Italian Colors Restaurant, – U.S. –, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013) (internal modifications omitted) (quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 637 n. 19, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)); Ragone, 595 F.3d at 125; Brady v. Williams Capital Group, L.P., 14 N.Y.3d 459, 466-67, 928 N.E.2d 383 (2010).

Plaintiff relies on Ragone, in which the Second Circuit indicated that an arbitration provision imposing, as relevant, a 90-day statute of limitation for filing an arbitration claim could arguably be incompatible with a plaintiff's ability to pursue a Title VII claim in arbitration. 595 F.3d at 125-26. Underlying the Second Circuit's concern was Title VII's statutory requirement that a plaintiff first pursue and exhaust administrative remedies before bringing suit, a process that could easily – if not certainly – run out the clock on the limited arbitration statute of limitation.[3] Id. at 126 (citing 42 U.S.C. §§ 2000(e) and (f)). That

---

[3]Title VII provides for a private right of action where a plaintiff: (1) has filed a timely administrative charge with the Equal Employment Opportunity Commission ("EEOC"); and (2) has received notification (a "right-to-sue" letter) that the administrative charge has either been dismissed or the time has expired in which the agency had to act. McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213-14 (2d Cir. 2006) (citing 42 U.S.C. §§ 2000-5(e) and (f)). A plaintiff subject to a six-month arbitration statute of limitations could easily fulfill the first requirement; it is the second requirement that raises a potential problem. Although it is possible for the EEOC to act expediently and notify a plaintiff of his or her right to sue before

discussion, however, was admittedly dicta because the defendant had waived enforcement of this provision. Id. at 125.

Courts which have directly confronted this issue, however, have held that the statutory exhaustion requirements for employment discrimination claims apply only to litigation in federal court and do not implicate private arbitration agreements. Morris v. Temco Service Industries, Inc., No. 09 Civ. 6194(WHP), 2010 WL 3291810, *5 (S.D.N.Y. Aug. 12, 2010); see Mazurkiewicz v. Clayton Homes, Inc., 971 F. Supp. 2d 682, 687-88 (S.D. Tex. 2013) ("an EEOC filing is not a prerequisite to arbitration"); see generally AT&T Mobility LLC v. Concepcion, – U.S. –, 131 S.Ct. 1740, 1749, 179 L. Ed. 2d 742 (2011) (the FAA preempts any state-law rule requiring exhaustion of administrative remedies before arbitration); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed.2 d 26 (1991) (arbitration of employment discrimination claims will not "undermine the [enforcement] role of the EEOC" inasmuch as "[n]othing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes"). This holding results from a recognition that "[a]rbitration is entirely a creature of contract. The rules governing arbitration, its location, **the law the arbitrators will apply**, indeed, even which disputes are subject to arbitration, are determined entirely by an agreement between the

---

the expiration of six months (see Pl's Aff ¶ 20 (Plaintiff filed his EEOC claim on November 9, 2013 and the right to sue letter issued on November 29, 2013)), the timeliness of that notification is not a matter within a potential plaintiff's control.  Indeed, absent an earlier dismissal, the EEOC does not have to send the right-to-sue letter for 180 days (approximately six months).  42 U.S.C. § 2000-5(f)(1).  Further, because New York has an agency with the authority to address charges of discriminatory employment practices, the EEOC is required to afford that state agency at least 60 days to take action under state or local law, thereby extending the time period before which the EEOC is required to issue a right-to-sue letter to 240 days. 42 U.S.C.A. §§ 2000e-5(d),(f)(1); see Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir.1993), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1072. Notably, receipt of a right-to-sue letter is also a prerequisite in federal court ADA claims, but not in an ADEA claim.  See Holowecki v. Federal Exp. Corp., 440 F.3d 558, 563 n. 2 (2d Cir. 2006).

parties." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 104 (2d Cir. 2006) (emphasis added); see Morris, 2010 WL 3291810 at *5; Mazurkiewicz, 971 F. Supp. 2d at 687-88. To that end, an arbitration provision that requires an employment discrimination claim to be arbitrated before statutory exhaustion procedures could possibly be completed is easily construed as reflecting the parties' agreement to waive such requirement, as well as any defense based on that requirement. Greenfield, 98 N.Y.2d at 569 (written "agreements are construed in accord with the parties' intent," the best evidence of which "is what they say in their writing"). Indeed, even in federal court, the exhaustion requirement is not jurisdictional, but, like a statute of limitations, is merely a precondition that may be waived by the parties or the court. Francis v. City of New York, 235 F.3d 763, 767 (2d Cir. 2000).

### IV. CONCLUSION

Defendants have met their burden of establishing that the 2000 Employment Agreement is valid and enforceable, and that all of Plaintiff's claims fall within the scope of that agreement's arbitration provision. Defendants' motion to compel arbitration is therefore granted.

### V. ORDERS

IT HEREBY IS ORDERED that Defendant's motion to compel arbitration (Docket No. 5) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to

close this case.

    SO ORDERED.

Dated: January 19, 2015
      Buffalo, New York

                                      <u>/s/William M. Skretny</u>
                                      WILLIAM M. SKRETNY
                                          Chief Judge
                                  United States District Court