UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMARJIT S. VIRK, M.D.,

                    Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                  14-CV-381S

MAPLE-GATE ANESTHESIOLOGISTS, P.C.
and JON GRANDE, M.D.,

                    Defendants.

## I. INTRODUCTION

     The underlying dispute here concerns Plaintiff Dr. Amarjit S. Virk's claims that Defendants Maple-Gate Anesthesiologists, P.C., and Dr. Jon Grande breached his employment contract and violated his civil rights when they terminated his employment with Maple-Gate on May 17, 2013.   The arbitrator engaged by the parties to resolve their dispute ruled largely in Dr. Virk's favor and awarded him $2,686,864.57 in total damages. Dr. Virk now seeks to confirm the arbitrator's award while the defendants seek to vacate it.   Because this Court finds that the arbitrator neither exceeded his powers nor manifestly disregarded the law in reaching his decision, Dr. Virk's motion to confirm the award will be granted, and the defendants' cross motion to vacate it will be denied.

## II. BACKGROUND

     This case involves breach-of-contract and civil rights claims brought by Dr. Virk against the defendants.   Dr. Virk originally sued in state court, after which the defendants removed the matter to federal court and immediately sought to compel arbitration.   After full briefing, this Court granted the defendants' motion to compel arbitration and dismissed the case.   See Virk v. Maple-Gate Anesthesiologists, 80 F. Supp. 3d 469 (W.D.N.Y.

2015).   On appeal, the Second Circuit upheld this Court's arbitration ruling, but found that the matter should have been stayed, not dismissed, pending arbitration.   See Virk v. Maple-Gate Anesthesiologists, 657 F. App'x. 19 (2d Cir. July 1, 2016).   This Court thereafter entered an order staying the case pending arbitration.   (Docket No. 25.)

A complete recitation of Dr. Virk's allegations are set forth in this Court's previous decision.   See Virk, 80 F. Supp. 3d at 471-473.   Essentially, Dr. Virk, a board-certified anesthesiologist and employee and shareholder of Maple-Gate Anesthesiologists, P.C., claimed that Maple-Gate and Dr. Jon Grande (also an employee and shareholder of Maple-Gate) discriminated against him and wrongfully terminated his employment in breach of his employment contract.   The defendants denied these allegations and asserted a number of defenses, including that they had cause to terminate Dr. Virk's employment when his hospital privileges were precautionarily suspended after a patient's death.   Pursuant to the terms of the employment contract and this Court's decision, the parties submitted their dispute to binding arbitration.   See id. at 480 (finding the employment agreement valid and enforceable, and further finding that each of Dr. Virk's claims fell within the scope of the agreement's arbitration provision).

David E. Daniels, Esq., served as arbitrator.   He heard testimony and accepted evidence over the course of a 7-day proceeding conducted in Buffalo, New York.   (Final Award, Docket No. 36-2, p. 1.)   Thereafter, on July 30, 2018, he issued a 42-page decision, largely in Dr. Virk's favor ("the Final Award").

After canvassing the evidence and making factual findings, including credibility determinations, the arbitrator first concluded that Dr. Virk failed to prove that the

defendants discriminated or retaliated against him due to his race, age, disability, or national origin.   (Final Award, pp. 32-33.)   Rather, the arbitrator found that the actions taken against Dr. Virk were motivated by non-discriminatory, general animosity toward Dr. Virk and a desire to oust him from the Maple-Gate practice.   (Id.)   But as to Dr. Virk's breach-of-contract claims, the arbitrator found that Dr. Virk sufficiently proved that Maple-Gate terminated his employment in breach of his employment contract.   (Id. at pp. 34-36.)   To compensate Dr. Virk for that breach and the lost wages associated therewith, the arbitrator awarded him total damages of $2,686,864.57, inclusive of interest.   (Id. at pp. 37, 40.)

### III. DISCUSSION

The defendants seek vacatur of the Final Award under § 10 of the Federal Arbitration Act ("FAA").   See 9 U.S.C. § 10.   They maintain that, in reaching his decision, the arbitrator exceeded his powers and manifestly disregarded the governing law.   Dr. Virk, on the other hand, seeks to confirm the Final Award under § 9 of the FAA and argues that no basis for vacatur exists.   See 9 U.S.C. § 9.   For the reasons set forth below, this Court finds that the Final Award must be confirmed.

Arbitration awards are not self-enforcing; judicial orders are required to give them force and effect.   D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). Under the FAA, which was enacted to overcome judicial resistance to arbitration and instill a national policy favoring it, see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), a court may confirm, vacate, modify, or correct an award, see 9 U.S.C. §§ 9-11.

Confirmation of an arbitration award is usually "'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the [motion to confirm] unless the award is vacated, modified, or corrected." D.H. Blair, 462 F.3d at 110 (citing Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).   "[A]n extremely deferential standard of review" applies "[t]o encourage and support the use of arbitration by consenting parties."   Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007); see also Landau v. Eisenberg, 922 F.3d 495, 498 (2d Cir. 2019) (per curiam) ("The FAA creates a strong presumption in favor of enforcing arbitration awards and courts have an extremely limited role in reviewing such awards.") (citations and quotation marks omitted); Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.").

The burden of proof required to avoid confirmation of an arbitration is therefore very high, since courts afford great deference to arbitration decisions.   See Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003) ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.").   Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'"   Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO, 954 F.2d 794,

4

797 (2d Cir. 1992) (quoting <u>Andros Compania Maritima, S.A. v. Marc Rich & Co.</u>, 579 F.2d 691, 704 (2d Cir. 1978)).   Consequently, "[v]acatur of arbitral awards is extremely rare."  <u>Hamerslough v. Hipple</u>, No. 10 Civ. 3056 (NRB), 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012).

Nonetheless, four statutory grounds exist to vacate, modify, or correct an arbitration award.  <u>See</u> 9 U.S.C. § 10 (a); <u>Weiss v. Sallie Mae, Inc.</u>, 939 F.3d 105, 108-109 (2d Cir. 2019).  A court may also vacate an arbitration award if it is rendered in "manifest disregard of the law."[1]  <u>Id.</u> at 109 (citing <u>Schwartz v. Merrill Lynch & Co., Inc.</u>, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted)).

**1.  There are no statutory grounds to vacate the Final Award**

Section 10 (a) of the FAA sets forth four statutory grounds for vacatur of an arbitration award:

> (1)   where the award was procured by corruption, fraud, or undue means;
>
> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[1] In <u>Weiss</u>, the Second Circuit declined to resolve the "epistemological debate" over whether the "manifest disregard" paradigm is an independent basis for judicial review or simply "judicial gloss" on the enumerated grounds for vacatur in § 10 (a).  939 F.3d at 109 (citing <u>Schwartz v. Merrill Lynch & Co.</u>, 665 F.3d 444, 451-52 (2d Cir. 2011)).   Either way, "manifest disregard" remains a valid ground for vacating an arbitration award.  <u>See id.</u>

The only one of these grounds that the defendants raise is the fourth: that the arbitrator exceeded his powers.   Whether an arbitrator exceeded his or her powers turns on a "limited inquiry . . . [into] 'whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue.'"   T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 346 (2d Cir. 2010) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir. 2002)) (alterations added).   "In other words, once [the court] determine[s] that the parties intended for the arbitration panel to decide a given issue, it follows that 'the arbitration panel did not exceed its authority in deciding that issue— irrespective of whether it decided the issue correctly.'"   Id. (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 101 (2d Cir. 2008)) (alteration added); see also Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) ("[T]he sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got it right or wrong.").

An arbitrator therefore exceeds his authority "only by (1) considering issues beyond those the parties have submitted for consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement."   Laidlaw & Co. v. Marinaccio, No. 19-CV-5246 (RA), 2020 WL 1151323, at *7 (S.D.N.Y. Mar. 10, 2020) (quotation marks and citation omitted).   As a result, "[b]ecause the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits."   Oxford Health Plans, 569 U.S. at 569 (quotation marks and citations omitted).

6

Here, the defendants argue that the arbitrator exceeded his powers by (1) finding a breach and awarding damages based on Dr. Grande's conduct, which was allegedly not asserted as a basis for breach or damages in Dr. Virk's arbitration complaint; (2) improperly considering Maple-Gate's by-laws in interpreting the employment contract; and (3) failing to follow certain holdings of this Court and the Second Circuit as they relate to construction of the agreement and statute of limitations issues.

Dr. Virk counters that the defendants have failed to show that the arbitrator exceeded his powers.  He argues that Dr. Grande's alleged conduct was squarely at issue; that the arbitrator had the discretion to consider the by-law provision in construing the contract; and that the Second Circuit reserved contract interpretation and statute of limitations issues to the arbitrator.

Having reviewed the parties' arguments, this Court finds that the defendants have failed to demonstrate that the arbitrator exceeded his powers.   First, the arbitrator fairly considered Dr. Grande's conduct in resolving Dr. Virk's claims.   The arbitration complaint alleges that the defendants engaged in "*concerted activity* in engineering the unlawful termination of his employment [and] failure to reinstate . . . ." (Arbitration Complaint, Docket No. 40-8, ¶ 1 (emphasis added).)   It further alleges that the defendants acted *individually and collectively* in violating Dr. Virk's contract rights.  (Id. ¶ 9 (emphasis added).)   Construed liberally, these allegations bring Dr. Grande's conduct (alleged later in the complaint) into play for each of Dr. Virk's claims.   Moreover, Dr. Grande is both an individual defendant as well as a shareholder in Maple-Gate, making his conduct generally relevant on all claims.   In any event, Dr. Grande's conduct was not the sole

basis for the arbitrator's breach findings, as there were several other grounds for breach cited in the decision.   (Final Award, pp. 34-35.)   Consequently, the arbitrator did not exceed his powers by considering Dr. Grande's conduct in connection with Dr. Virk's breach-of-contract claim.

Second, the arbitrator's consideration of the by-laws and his determinations concerning contract interpretation and the applicable statute of limitations fell squarely within his province.   The arbitrator considered the by-laws in connection with interpreting the employment contract, which was his task.   And while the defendants make law-of-the-case type arguments extrapolated from certain statements in this Court's and the Second Circuit's decisions—statements made in conjunction with determining the enforceability of the arbitration provision—the Second Circuit ultimately found that the arbitrator should be the one to interpret the contract and resolve related issues, including those concerning statutes of limitation, which he did.   Virk, 657 F. App'x. at *21-23.

The defendants no doubt disagree with the arbitrator's reasoning and believe he erred, but that is not the standard.   Rather, the defendants must show that the arbitrator exceeded his powers in reaching his conclusions, which they have not done.   See KT Corp. v. ABS Holdings, Ltd., 17 Civ. 7859 (LGS), 2018 WL 3435405, at *4 (S.D.N.Y. July 12, 2018) ("the Panel did not exceed its authority because the basis for its holding was one of 'construing [and] applying the contract,' which was within the scope of the arbitration provisions in the parties' agreements").   Instead, this Court finds that the arbitrator had the power to reach and resolve each of the issues above.   See T.Co Metals, 592 F.3d at 346.

Accordingly, for these reasons, this Court finds no basis to vacate the Final Award under § 10 (a)(4).

### 2.   The Final Award is not in manifest disregard of the law

"To vacate an award on the basis of a manifest disregard of the law, the court must find 'something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"   Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 n. 1 (2d Cir. 2011) (quoting Westerbeke, 304 F.3d at 208); see T.Co Metals, 592 F.3d at 339 (errors of law and fact insufficient to vacate arbitration award).   Rather, the challenging party "must clearly demonstrate[ ] 'that the panel intentionally defied the law.'"   STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (quoting Duferco, 333 F.3d at 389); see, e.g., N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100, 256 F.3d 89, 93 (2d Cir. 2001) (per curiam) (finding manifest disregard standard satisfied where arbitrator explicitly rejected controlling Second Circuit authority in favor of applying an out-of-circuit rule).   Notably here, "[w]ith respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract."   T.Co Metals, 592 F.3d at 339.

The Second Circuit has articulated the manifest-disregard standard as follows:

> A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent.   We will uphold an arbitration award under this standard so long as the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract.   Vacatur is only warranted, by contrast, when an arbitrator strays from interpretation and application of the agreement and effectively

dispenses his own brand of industrial justice.

Weiss, 939 F.3d at 109 (citations and quotation marks omitted).

A two-part inquiry applies.   First, the court must consider "whether the 'governing law alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly applicable.'"   Westerbeke, 304 F.3d at 209 (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986) (alteration in original)).   Second, the court must determine whether the arbitrators knew of "the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it."   Id.

As to the first inquiry, the defendants maintain that the arbitrator disregarded fundamental principles of contract interpretation under New York law, disregarded findings made by this Court and the Second Circuit, disregarded applicable statutes of limitations, and disregarded the collateral-estoppel doctrine.   Assuming that these provisions constitute governing law, there appears no dispute that these legal principles were well defined and explicit at the time of the arbitrator's decision.

As to the first part of the second inquiry, the Final Award reflects the arbitrator's knowledge of and familiarity with these legal principles.   But as to the remaining part of the second inquiry, the defendants have made no showing that the arbitrator chose to ignore these legal principles or pay no attention to them.   Again, the defendant's burden is to clearly show that the arbitrator intentionally defied the law, STMicroelectronics, 648 F.3d at 78, engaged in egregious impropriety, T.Co Metals, 592 F.3d at 339, or dispensed his own brand of industrial justice, Stolt-Nielsen, 559 U.S. at 671 (citations omitted).

Having closely reviewed the record and considered the parties' arguments, this

10

Court finds that the defendants have failed to carry their heavy burden.   Contrary to the defendants' arguments, it is clear from the Final Award that the arbitrator set forth and applied principles of contract law (Final Award, pp. 14, 16, 34), addressed findings made by this Court and the Second Circuit (id. pp. 13, 16), and considered the applicability of the statutes of limitation (id. pp. 14-17) and collateral-estoppel doctrine (id. p. 16).

The defendants couch what are really objections to the Final Award as claims of manifest disregard.   In the course of interpreting the parties' contract, the arbitrator considered and rejected many of the very same arguments that the defendants raise here.   No matter how artfully repackaged, the defendants' claims remain simple points of error that do not meet the manifest disregard standard.   See Jock, 646 F.3d at 121 n. 1.   The defendants continue to disagree with the arbitrator and are no doubt dissatisfied with his analysis and decision, but they have not demonstrated that the arbitrator intentionally defied governing law, engaged in egregious impropriety, or dispensed his own brand of industrial justice.   See STMicroelectronics, 648 F.3d at 78; T.Co Metals, 592 F.3d at 339; Stolt-Nielsen, 559 U.S. at 671.   And again, that the defendants may disagree or find error in the arbitrator's application of the law is not a basis to find manifest disregard.   See Jock, 646 F.3d at 121 n.1; T.Co Metals, 592 F.3d at 339; Unite Here Local 100 v. Westchester Hills Golf Club, Inc., 161 F. Supp. 3d 262, 265 (S.D.N.Y. 2016) ("An arbitrator's 'factual findings and contractual interpretation are not subject to judicial challenge.'") (quoting Westerbeke, 304 F.3d at 214).   The defendants have therefore not met the manifest-disregard standard.

## IV. CONCLUSION

The parties agreed to resolve "any controversies or claims arising out of or relating to" the employment agreement through arbitration.   (Employment Agreement, Docket No. 36-3, p. 4.)   The arbitrator largely held in Dr. Virk's favor.   Whether this Court or any other would interpret the employment agreement the same way is not at issue, for a federal court must confirm an arbitration award so long as there is a "barely colorable justification for the outcome reached," a standard that is easily met here.   See Andros Compania Maritimo, 579 F.2d at 704.   Because there exist no grounds to vacate the arbitrator's Final Award, it must and will be confirmed. See 9 U.S.C. § 9; Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez., 863 F.3d 96, 118 n. 18 (2d Cir. 2017) ("In FAA practice, an order 'confirming' an arbitral award must be issued upon timely application of any party to the arbitration and upon prior notice served upon the adverse party unless the award is vacated, modified, or corrected as provided for by the Act."). Interest on the award will accrue from July 30, 2018, through the entry of judgment, in accordance with New York law and the parties' arbitration agreement.[2]   The parties will each bear their own attorney's fees and costs.

## V. ORDERS

IT HEREBY IS ORDERED, that Dr. Virk's Motion to Confirm the Final Award (Docket No. 36) is GRANTED.

FURTHER, that the defendants' Cross-Motion to Vacate the Final Award (Docket No. 40) is DENIED.

FURTHER, that interest on the Final Award will accrue from July 30, 2018, through

---

2  The defendants offered no opposition to Dr. Virk's request for post-award interest.

the entry of judgment, in accordance with New York law and the parties' arbitration agreement.

FURTHER, that the parties will each bear their own attorney's fees and costs.

FURTHER, that the Clerk of Court is directed to ENTER JUDGMENT confirming the Final Award (Docket No. 36-2) and then CLOSE this case.

SO ORDERED.


Dated:   June 8, 2020
          Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

13